UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JACQUELINE MORRIS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | No. 14 C 7815 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

Plaintiff Jacqueline Morris ("Plaintiff") appeals the Commissioner of Social Security's decision to deny her Supplemental Security Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We grant Plaintiff's motion for summary judgment [dkt. 11] and deny the Commissioner's motion for summary judgment [dkt. 16]. The Administrative Law Judge's decision is reversed and remanded.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") under Title XVI of the SSA. Plaintiff filed a motion for summary judgment [dkt. 11] seeking reversal of the decision of the Administrative Law Judge ("ALJ"). A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion and deny the Commissioner's motion [dkt. 16]. The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

1

On January 27, 2012, Plaintiff filed an application for disability benefits alleging that she has been disabled since June 30, 2010, and claiming that she had disc problems in her spine, arthritis in her spine, knee, and arms, sciatica, and numbness in her left leg and arm.[1] The Social Security Agency denied Plaintiff's claims initially and denied them again upon reconsideration.[2] Plaintiff filed a request for a hearing before an ALJ on July 11, 2012.[3] The request was granted, and ALJ John K. Kraybill held a hearing on May 23, 2013.[4]

Following the hearing, the ALJ determined, *inter alia*, that: 1) the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015; 2) the Plaintiff has not engaged in substantial gainful activity since June 30, 2010; 3) the Plaintiff suffered from the severe impairment of degenerative disc disease; 4) the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments as defined in 20 CFR Part 404, Subpart P, Appendix 1; 5) the Plaintiff has the Residual Functional Capacity ("RFC") necessary to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with additional stipulations, including that she is limited to sitting two hours continuously, cannot climb ladders, ropes, and scaffolds, and may only occasionally climb stairs, balance, stoop, kneel, crouch or crawl; 6) given the Plaintiff's RFC, the Plaintiff is capable of performing previous work as a waitress, cashier, and sales clerk.[5]

Between 1990 and 2010, Plaintiff was regularly employed, working as a waitress, cashier, and sales clerk at a bakery.[6] Until 2010, Plaintiff lived in Las Vegas, Nevada, but moved to Illinois to live with her son because she was suffering from worsening lower back

---

[1] R. at 189, 244.
[2] R. at 61-64.
[3] R. at 128-129.
[4] R. at 21-60.
[5] R. at 14-20.
[6] R. at 252.

pain.[7] Plaintiff testified that her leg pain radiates to her legs and feet, and prevents her from walking more than half a block or lifting anything heavier than a gallon of milk.[8]

The record shows that the Plaintiff began to seek treatment for her back pain in 2009, when she presented to a Las Vegas emergency room with significant tenderness in her lower back, and pain radiating down her left leg.[9] The record also reveals several more visits to emergency rooms due to back pain, including several diagnostic examinations on Plaintiff's back. For instance, an MRI taken on May 2, 2012 at John Stroger Hospital showed disc protrusion contacting the nerve roots at the L4/L5 level and the L5/S1 level.[10]

Plaintiff began seeing her reported treating physician, Dr. Lloyd Licuanan, on April 23, 2013.[11] The record contains documents from two visits to Dr. Licuanan – the initial visit, and a second visit on May 7, 2013. On May 10, 2013, following Plaintiff's second visit, Dr. Licuanan completed a Physical Capacities Assessment form stating that Plaintiff could lift or carry up to ten pounds, could only stand or walk for an hour or less during a normal workday, and had an unlimited capacity to sit during a normal workday.[12] Plaintiff testified that she was able to get access to medical insurance approximately one month before her hearing in May 2013, and began physical therapy treatment for her back pain shortly before her hearing.[13]

At the hearing before the ALJ, Dr. Ashok Jilhewar testified as the medical expert ("ME"). The ME testified that, based on his review of the medical records, the Plaintiff was capable of performing light work. However, on cross examination by the Plaintiff's attorney, the ME testified that he could not rule out the possibility that the nerve compression in the MRIs

---

[7] R. at 31-32.
[8] R. at 32-33.
[9] R. at 296.
[10] R. at 378.
[11] R. at 468.
[12] R. at 466.
[13] R. at 34.

caused Plaintiff back pain, or that standing or walking caused her pain.[14] He further stated that Dr. Licuanan's opinion that walking and standing exacerbated the Plaintiff's condition may have been correct.[15]

In finding that the Plaintiff had the capacity to perform light work with the aforementioned limitations, the ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[16] The ALJ's opinion then spends two pages summarizing the findings in the medical records, before providing the following two-paragraph explanation for his conclusion regarding the Plaintiff's RFC:

> As for the opinion evidence, the undersigned gives little weight to the residual functional capacity assessment of Dr. Lieuanan (sic). Dr. Lieuanan (sic) indicated that the claimant could perform no greater than sedentary work but saw the claimant only one time previously.
>
> In sum, the above residual functional capacity assessment is supported by the minimal objective findings, the lack of continuing treatment, the opinion of Dr. Jilhewar, the medical expert, and the claimant's inconsistent and out of proportion testimony with the medical evidence.[17]

The ALJ did not provide any further analysis for his RFC determination. For the reasons discussed more fully below, the ALJ's decision is reversed and remanded.

## DISCUSSION

I. **STANDARD OF REVIEW**

---

[14] R. at 46-48.
[15] R. at 46-48.
[16] R. at 18.
[17] R. at 20.

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[18] if it is supported by substantial evidence, and if it is free of legal error.[19] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[20] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[21] A "minimal[] articulat[ion] of her justification" is enough.[22]

**II.    The ALJ Failed To Apply The "Treating Physician Rule."**

The Plaintiff first claims that the ALJ erred in assigning little weight to Dr. Licuanan's, opinion.[23] The ALJ gave little weight to the treating physician's opinion because, according to the ALJ, Dr. Licuanan had only treated the Plaintiff on one occasion before issuing his Physical Capacities Assessment form. The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence.[24] When, as here, an ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider five factors: (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) "[s]upportability;" (4) consistency "with the record as a whole;" and (5) whether the treating physician was a specialist in the relevant area.[25]

---

[18] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[19] 42 U.S.C. § 405(g).
[20] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[21] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[22] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[23] R. at 359.
[24] 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).
[25] 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009).

Here, the ALJ either failed to discuss, or inaccurately characterized, all of these factors. There is no analysis whatsoever regarding whether Dr. Licuanan's opinion was supported by the record as a whole, nor its consistency, nor whether Dr. Licuanan had any particular specialty. Additionally, regarding the factors relating to the length or extent of treatment, the ALJ simply misstated the record, saying that the Plaintiff only saw her treating physician on one occasion before he issued his opinion on Plaintiff's RFC. While the Plaintiff did, in fact, only treat with Dr. Licuanan twice, the fact that the ALJ misstated this portion of the record indicates that he did not appropriately consider Dr. Licuanan's opinion before rejecting it. While the ALJ's decision to give minimal weight to the treating physician's opinion was not entirely unfounded, given the relatively short treatment history, the process he used to arrive at that decision was deficient due to the incomplete consideration of all the factors. As such, the ALJ failed to apply all of the five factors from 20 C.F.R. § 404.1527(c)(2)-(5), and his decision is hereby remanded for a more thorough analysis.

### III. The ALJ Failed to Properly Explain His Credibility Determination.

The Plaintiff also contends that the ALJ's ruling regarding the Plaintiff's credibility was patently wrong. Social Security Ruling 96-7p states that, when making credibility determinations on the claimant's statements about his or her symptoms, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave the individual's statements and the reasons for that weight." Additionally, "[i]t is not sufficient for the adjudicator to make a single,

conclusory statement" regarding the individual's credibility, or lack thereof.[26] The Seventh Circuit has reversed ALJs where it was impossible to "tell whether the ALJ investigated 'all avenues' that relate to [the claimant's] complaints of pain because [the ALJ's] decision offers no clues as to whether she *examined* the full range of medical evidence as it relates to [the claimant's] claim."[27]

Here, the ALJ provided the conclusory statement that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision,"[28] but failed to explain those supposed "reasons." There was no discussion regarding which of the Plaintiff's statements were not credible, how they failed to line up with the objective medical evidence, or why the ALJ believed they were inconsistent with the record as a whole. The ALJ did not explain why he believed that the Plaintiff's claims were not credible, but simply concluded that they were not without any analysis of the record. In short, this is the type of single conclusory statement that is insufficient Social Security Ruling 96-7p, and fails to provide this Court with "a sufficient basis to sustain the ALJ's credibility determination."[29] As the Seventh Circuit noted in *Zurawksi*, this Court is "not suggesting that the ALJ's credibility determination was incorrect, but only that greater elaboration is necessary."[30] Therefore, the ALJ's decision is reversed and remanded.

## **CONCLUSION**

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 11] and the Commissioner's motion for summary judgment is hereby denied [dkt. 16].

---

[26] Social Security Ruling 96-7p.
[27] *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).
[28] R. at 18.
[29] Zurakwsi, 245 F.3d at 888.
[30] *Id.*

**DATED:** 12/10/2015          _____

                              Susan E. Cox

                              United States Magistrate Judge